UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
GOVERNMENT EMPLOYEES INSURANCE
COMPANY, et al.,                                                       MEMORANDUM
                                       Plaintiffs,                         AND ORDER
                     - against -
RIGHT SOLUTION MEDICAL SUPPLY, INC., et al.,            12-CV-0908 (MKB) (JO)
                                     Defendants.
----------------------------------------------------------------------X

JAMES ORENSTEIN, Magistrate Judge:

On March 21, 2012, the Clerk entered the default of defendant Yefim Klikshteyn ("Klikshteyn"), as well as that of defendant Right Solution Medical Supply, Inc. ("Right Solution"). Docket Entry ("DE") 12; DE 13. Each of those defendants now moves to vacate the default. DE 17; *see* Fed. R. Civ. P. 55. For the reasons set forth below, I deny the motion.

I.    Background

    A.    The Complaint

Plaintiffs Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO") initiated this action on February 24, 2012, alleging that Right Solution, Klikshteyn, and others have taken advantage of New York's no-fault insurance regime to repeatedly and fraudulently bill GEICO for hundreds of thousands of dollars to which they were not entitled. *See* DE 1 (Complaint). GEICO is a New York automobile insurer to whom the defendants submit, or cause to be submitted, claims seeking payment for durable medical equipment ("DME") and orthotic devices provided to GEICO policy holders who are involved in automobile accidents. *Id.* ¶ 2. GEICO asserts that Klikshteyn owns Right Solution, and that the latter company bills GEICO for DME and orthotic devices that it obtains wholesale from co-defendants Chesteron, Inc., and Ropa, Inc. (both of which have also defaulted). *Id.*

Under New York's no-fault insurance law, automobile insurance providers are required to include in their policies coverage for injuries arising from car accidents, irrespective of who is to blame for the accident. No-fault benefits include up to $50,000 for necessary expenses that are incurred for health care goods and services. Complaint ¶ 17. An insured victim can assign her right to no-fault benefits to the providers of healthcare services in exchange for those services. *Id.* ¶ 18. Pursuant to such an assignment, a health care provider may then submit claims to an insurance company and directly receive payment for goods and services rendered. *Id.* The maximum permissible charge for DME and orthotic devices is the fee payable under the New York State Medicaid program. *Id.* ¶ 22. Where the Medicaid program has not established a fee payable for a specific item, the maximum permissible charge is the lesser of the providers' acquisition cost plus 50 percent, or the usual and customary price charged to the general public. *Id.* ¶ 23.

GEICO alleges that, since April 2009, Right Solution has submitted more than $1,050,000 in fraudulent no-fault claims.[1] *Id.* ¶ 25. Specifically, GEICO alleges that Right Solution and Klikshteyn engaged in a scheme whereby they paid kickbacks to no-fault clinics to prescribe large amounts of DME and orthotic devices to accident victims who were then directed to Right Solution to fill the prescriptions. *Id.* ¶ 26. In exchange for the kickbacks, the physicians and chiropractors associated with the clinics systematically wrote prescriptions for DME and orthotic devices that were not covered by the Medicaid fee schedule. *Id.* ¶ 27. Right Solution and Klikshteyn then used fraudulently inflated wholesale invoices provided by wholesalers Chesteron and Ropa to seek reimbursement from GEICO based on the devices' purported acquisition costs, which were sometimes more than five times the actual value of the products. *Id.* ¶¶ 29-30. To the extent that the physicians or chiropractors wrote prescriptions for devices that were covered by the

---

[1] GEICO has paid Right Solution approximately $178,000 for these claims. Claims for the remaining $905,000 have yet to be adjudicated. Complaint ¶ 25.

Medicaid fee schedule, the prescriptions were written in terms so vague as to allow Right Solution to misrepresent that nature of the items actually prescribed and the nature of the items actually provided to patients. *Id.* ¶ 28. For example, where prescriptions called for "cervical collars," Right Solution billed GEICO for custom-fitted, two-piece, rigid collars at $233.00 per unit, rather than for basic foam collars which have an established fee payable of $6.80. *Id.* ¶ 40(2). To create the illusion that Right Solution actually paid the inflated prices reflected in the claim forms submitted to GEICO and in the wholesale invoices, Right Solution and Klikshteyn issued checks to Chesteron and Ropa for the full invoice amounts, and then submitted the checks to GEICO as proof of payment. *Id.* ¶ 31. Chesteron and Ropa then issued "rebates" to Right Solution and Klikshteyn, returning the majority of the amounts received while retaining a portion for themselves. *Id.*

Based on the foregoing allegations, GEICO has asserted a variety of claims against the defendants, including fraud and unjust enrichment. *Id.* ¶¶ 51-71. In addition to monetary damages, GEICO requests a declaration that that the defendants have no right to receive payment for any pending claims. *Id.* ¶¶ 47-50.

B. Procedural History

GEICO served process on all four named defendants in late February 2012; in particular, it served Klikshteyn personally and effected service on Right Solution by delivering the summons and Complaint to the New York Secretary of State. DE 1; DE 4; DE 5; DE 6. None of the defendants responded to the Complaint and, on March 21, 2012, GEICO asked the Clerk to enter the default of each. DE 8; DE 9; DE 10; DE 11. The Clerk did so the same day. DE 12; DE13; DE 14; DE 15.

On June 12, 2012, Right Solution and Klikshteyn filed the instant motion to vacate their default. DE 17. In an affidavit accompanying the motion, Klikshteyn acknowledged that he had been personally served with the summons and complaint, but stated that Right Solution had not received those documents because the company was no longer operating at the address registered with the Secretary of State, and the Post Office had failed to forward the summons and complaint to Right Solution's new address, despite a standing instruction to forward the company's mail. DE 17-1 (Affidavit of Yefim Klikshteyn) ("Klikshteyn Aff.") ¶ 3. Klikshteyn stated further that, at the time he was personally served with the summons and complaint, he did not understand that the documents were intended to provide notice of a new action; instead, he claimed that he mistakenly believed that the papers were related to separate pending litigation between GEICO and Right Solution. *Id.* ¶ 6. When Klikshteyn showed the documents to his attorney, she informed him that they related to a new lawsuit, but stated that she could not represent him in the new matter due to a potential conflict of interest. *Id.* Klikshteyn thereafter searched for an attorney to represent him in this case. *Id.* ¶¶ 6-7. On March 15, 2012, he spoke with attorney John Tasolides ("Tasolides") about the case; he formally retained Tasolides on March 29, 2012. *Id.* ¶ 7.

Tasolides reviewed the docket and discovered that Klikshteyn and Right Solution were already in default. *Id.* ¶ 7. He then immediately contacted GEICO's counsel to seek its consent to vacate his clients' defaults and engage in settlement discussions. *Id.*; DE 17-2 (Letter from Tasolides to Justin Calabrese). GEICO declined to consent to vacating the defaults, but agreed to refrain from filing a motion for default judgment while the parties discussed settlement. Klikshteyn Aff. ¶ 7. Two months later, the parties had failed to come to an agreement, and

Tasolides filed his notice of appearance along with the instant motion and supporting papers. DE 16; DE 17; *see* DE 17-3 (memorandum of law) ("Memo.").

GEICO submitted its response to the motion on June 20, 2012. DE 19 (memorandum of law in opposition) ("Opp."); DE20 (supporting declaration of counsel, with exhibits) ("Levy Dec."). I heard argument on the motion on June 26, 2012, and solicited further evidentiary submissions. *See* DE 24 (minute entry); DE 27 (transcript) ("Tr.") at 9-17. The defendants filed their supplemental submission on June 29, 2012, DE 25, and GEICO responded on July 6, 2012. DE 26.

II.     Discussion

Once the Clerk has entered a party's default, the court may set it aside "for good cause[.]" Fed. R. Civ. P. 55(c). The determination of good cause is "'left to the sound discretion of a district court[,] because it is in the best position to assess the individual circumstances of a given case and to evaluate the credibility and good faith of the parties.'" *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993)). In exercising that discretion, "the district court is to be guided principally by three factors: (1) whether the default was willful, (2) whether the defendant demonstrates the existence of a meritorious defense, and (3) whether, and to what extent, vacating the default will cause the nondefaulting party prejudice." *Hanover Ins. Co. v. Hopwood*, 2011 WL 3296081, at *1-2 (S.D.N.Y. May 26, 2011) (quoting *SEC v. McNulty,* 137 F.3d 732, 738 (2d Cir.1998)).

  A.     Willfulness

Mere tardiness in meeting a court deadline does not establish a willful default; rather, the lateness must reflect conduct by the litigant or his counsel that was "egregious and … not

5

satisfactorily explained." *McNulty,* 137 F.3d at 738 (internal citations omitted). While GEICO need not demonstrate that the defendants acted in bad faith, it must show that more than that their delay was the result of negligence or carelessness. *See RC Entm't, Inc. v. Rodriguez*, 1999 WL 777903, at *2 (S.D.N.Y. Sept. 29, 1999) (internal citations omitted). GEICO can establish willfulness if it establishes that the defendants defaulted deliberately. *Gucci Am., Inc. v. Gold Ctr. Jewelry*, 158 F.3d 631, 635 (2d Cir.1998).

Applying this standard, I conclude that the defendants did not willfully default. GEICO secured the Clerk's entry of default on March 21, 2012 – only one day after the deadline for Right Solution's response to the Complaint, and two days after Klikshteyn's deadline. By that time, Klikshteyn had already consulted with at least two attorneys in an effort to secure representation for himself and Right Solution in this case. Unaware that he and Right Solution were already in default, Klikshteyn formally retained Tasolides eight days later. Tasolides immediately reviewed the court records and discovered that his clients were in default, and then contacted GEICO to discuss the possibility of settling the case. When settlement negotiations failed, Tasolides moved to vacate the default.

These facts paint a clear picture of negligence, at worst, rather than willfulness. Although Klikshteyn failed to act quickly enough to avoid default, his conduct refutes the proposition that his failure to enter a timely appearance was deliberate. Similarly, his counsel's conduct was entirely understandable: having found his client already in default when he began his work on the case, he immediately contacted GEICO's counsel, secured an agreement to put off further action on the default until the parties had an opportunity to engage in settlement discussions that appear to have been sincere (if, only sporadic, as GEICO alleges, *see* Opp. at 2), and then promptly sought to

vacate the default once those negotiations failed. Viewed in context, the defendants do not appear to have acted willfully.

>    B.    Prejudice

"To establish prejudice in the context of a default, there must be a showing that 'the delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.'" *Arthur F. Williams, Inc. v. Helbig*, 208 F.R.D. 41, 45 (E.D.N.Y. 2002) (quoting *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983)). Thus, "delay alone is not a sufficient basis for establishing prejudice," and the plaintiff must instead show "something more," such as that the "delay may thwart plaintiff's recovery or remedy." *New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005) (internal citations omitted); *see also*, *e.g.*, *United States v. Chesir*, 862 F. Supp. 2d 286, 292 (E.D.N.Y. 2012).

GEICO contends that the delay occasioned by the default has resulted in prejudice because during the pendency of this action, the defendants have continued to prosecute collection claims against GEICO in state court – claims that GEICO characterizes as fraudulent. DE 19 at 13-14. In other words, GEICO argues that it will incur increased damages both as a result of the delay in the defendants' appearance in this action and as a result of the increased time it will take to resolve this case if the instant motion is granted and the defendants are permitted to defend against GEICO's claims. That argument fails because it necessarily rests on the assumption that GEICO's claims are meritorious. This court can make no such assumption in assessing prejudice at this stage: to the contrary, the merit of GEICO's substantive claims turns on the veracity of "allegation[s] that will have to be proven, not … established fact[s] that amount[ ] to prejudice at this stage of the litigation." *Grosso v. Radice*, 2007 WL 4441022, at *2 (E.D.N.Y. Dec. 10, 2007).

Nor is there any other basis for finding prejudice. The delay occasioned thus far by the defendants' default constitutes a matter of months, and has not been so prolonged as to raise a serious risk of lost evidence or increased difficulties of discovery. Moreover, virtually none of the delay is solely attributable to the defendants: some of it arose as a result of the parties' consensual agreement to engage in settlement negotiations, and essentially all of the remainder has been consumed by litigation of the instant motion. I therefore conclude that vacating the defendants' default would cause GEICO no cognizable prejudice.

C.   Meritorious Defense

Notwithstanding my conclusion that the defaults at issue here were neither willful nor prejudicial, I deny the motion to vacate because the defendants have failed to demonstrate that they have any meritorious defense to GEICO's claims. It is of course true that courts have a "strong preference for resolving disputes on the merits," *City of New York v. Mikalis Pawn Shop*, 645 F.3d 114, 129 (2d Cir. 2011) (internal citations omitted), and that at this stage of the case, "all doubts must be resolved in favor of the party seeking relief from the default judgment." *Hanover Ins. Co.*, 2011 WL 3296081, at *2 (internal citation omitted). Nevertheless, a defaulting defendant's failure to demonstrate the existence of a meritorious defense, standing alone, is a sufficient reason to deny the motion to vacate the entry of default. *See Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1980); *Capital Records v. Defries*, 2012 WL 3041583, at *5 (S.D.N.Y. July 20, 2012); *Brown v. Gabbidon*, 2007 WL 1423788, at *4-5 (S.D.N.Y. May 14, 2007); *cf. State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 174 (2d Cir. 2004) (similar result with respect to a motion to vacate a default judgment pursuant to Fed. R. Civ. P. 60 (as opposed to the vacatur of the entry of default pursuant to Fed. R. Civ. P. 55)); *United States v. Burnette*, 2007 WL

201164, at *4 (E.D.N.Y. Jan. 3, 2007) (same); *United States v. Estrada*, 2006 WL 3050886, at *1 (E.D.N.Y. Oct. 20, 2006) (same).

In seeking to demonstrate the existence of a meritorious defense, the defendants need not conclusively establish any facts, but they do have an obligation to come forward with "'evidence of facts that, if proven at trial, would constitute a complete defense.'" *State St. Bank & Trust*, 374 F.3d at 166 (quoting *McNulty*, 137 F.3d at 740); *Kauhsen v. Aventura Motors, Inc.*, 2010 WL 2301289, at *5 (E.D.N.Y. June 7, 2010) ("In order to support a claim of a meritorious defense a movant must proffer credible evidence of facts 'which directly relate[ ] … to the allegations [in the complaint] and raise[ ] a serious question as to the validity of those allegations.'") (quoting, *inter alia*, *Salomon v. 1498 Realty*, 148 F.R.D. 127, 130 (S.D.N.Y. 1993)).

Conclusory denials of a plaintiff's factual allegations do not suffice to establish a meritorious defense. *State Farm Mut. Auto. Ins. Co. v. Cohan*, 409 F. App'x 453, 456 (2d Cir. 2011) (citing *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001)); *Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 456 (S.D.N.Y. 2007) ("Although in an answer general denials normally are enough to raise a meritorious defense, the moving party on a motion to reopen a default must support its general denials with some underlying facts.") (quoting *Sony Corp.,* 800 F.2d at 320). However, such denials are all the defendants here provide.

As evidence of a meritorious defense, Klikshteyn denies that he or Right Solution engaged in "any wrongdoing … with respect to any of the matters in the Complaint," and swears that he and Right Solution "adhered" to the "relevant guidelines for markups of pricing of Durable Medical Equipment and supplies." Klikshteyn Aff. ¶ 8. Such conclusory and self-serving denials of liability, even in the form of an affidavit, do not constitute anything approaching "credible

9

evidence of facts 'which directly relate[ ] … to the allegations [in the complaint] and raise[ ] a serious question as to the validity of those allegations." *Kauhsen*, 2010 WL 2301289, at *5 (internal quotations omitted). Klikshteyn also avers that he is in possession of "thousands of pages" of documents that he will offer at trial to "demonstrate that Right Solution's pricing complied with all regulations." *Id.* However, the only examples of such documents that he provides are the very same wholesale invoices, insurance claim forms, and cancelled checks that the Complaint alleges were the primary instruments of the defendants' fraud. Without additional evidence to rebut the Complaint's allegations that the dollar amounts reflected in the invoices and claim forms were grossly in excess of the actual market value of the equipment described therein, these documents in no way suggest the existence of a meritorious defense.

Nor is the preceding failing the only deficiency: the defendants likewise fail to identify any evidence to rebut the Complaint's other allegations of fraud. For example, the defendants offer no evidence to rebut allegations that they systematically used generic, non-descript prescriptions issued by the clinics to bill GEICO for equipment that was far more costly than the basic items actually provided to the patients. The Complaint identifies six specific examples of the defendants' use of generic prescriptions to fraudulently bill GEICO in this manner. *See* Complaint ¶ 40(i)-(vii). The defendants fail to identify evidence to rebut even one of these examples.

In their motion papers, the defendants purport to identify a number of legal defenses that they would raise if permitted to file an answer. None of those theories constitutes a complete defense to GEICO's claims that would justify vacating the defendants' default. First, the defendants assert that GEICO's claims are barred by the doctrines of collateral estoppel and res judicata because they overlap with the collection actions brought by the defendants against GEICO

in state court. DE 25 at 4. I disagree: even if such doctrines might prevent GEICO from recovering a portion of the damages they seek with respect to specific payments, that would not undermine the merit of GEICO's overall theory of liability with respect to its causes of action. Second, to the extent the defendants appear to raise an unspecified abstention defense based on the existence of the state court collection actions, *see id.*, they rely on a theory that judges in this district have repeatedly rejected in analogous circumstances. *See*, *e.g.*, *State Farm Mut. Auto. Ins. Co. v. James M. Liguori, M.D., P.C.*, 616 F. Supp. 2d 221, 238-40 (E.D.N.Y. 2008); *State Farm Mut. Auto. Ins. Co. v. Schepp*, 616 F. Supp. 2d 340, 345-49 (E.D.N.Y. 2008). The defendants similarly ignore established case law in arguing that GEICO's claim for a declaratory judgment "may not properly be before this Court at this time" because GEICO's objections to the defendants' claims for reimbursement were not properly raised within the thirty day time frame provided for objection or payment under the no-fault regime. DE 25 at 4-6; *see*, *e.g.*, *Cambridge Med., P.C. v. Allstate Ins., Co.*, --- F. Supp. 2d ---, 2012 WL 5077481, at *5 (E.D.N.Y. Oct. 16, 2012); *State Farm Mut. Auto. Ins. Co. v. Grafman,* 655 F. Supp. 2d 212, 223-24 (E.D.N.Y. 2009); *Liguori,* 589 F. Supp. 2d at 229; *Allstate Ins. Co. v. Valley Physical Med. & Rehab., P.C.,* 555 F. Supp. 2d 335, 339-40 (E.D.N.Y. 2008).

Given the defendants' failure to identify any viable factual or legal defense to GEICO's claims, I conclude that denying their motion to vacate the default is entirely consistent with the strong preference in this circuit for resolving disputes on the merits. In short, the defendants have failed, despite ample opportunity, to demonstrate there is any cognizable dispute to be resolved on the merits. As a result, in the absence of any reason to believe there is a meritorious defense, setting aside the default would be a pointless exercise that would serve only to impose needless

burdens on the parties and the court. *Cf. New York v. Green*, 2004 WL 1375555, at *7 (W.D.N.Y. June 18, 2004) ("The existence of a meritorious defense is a critical factor because, without a valid defense, there is no point in setting aside the default judgment.") (internal quotation omitted).

III. Conclusion

For the reasons set forth above, I deny the defendants' motion.

SO ORDERED.

Dated: Brooklyn, New York
   December 19, 2012

                         /s/
                      JAMES ORENSTEIN
                      U.S. Magistrate Judge